**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**ANDREW GILBERT SCHMUHL,**

Petitioner,

v. Civil Action No. **3:24CV483 (RCY)**

**CHADWICK DOTSON,**

Respondent.

# MEMORANDUM OPINION

Andrew Gilbert Schmuhl, a Virginia state prisoner proceeding through counsel, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition" or "Petition," ECF No. 7[1]), challenging his conviction in the Circuit Court of Fairfax County, Virginia ("Circuit Court") for two counts of abduction for pecuniary benefit, two counts of aggravated malicious wounding, two counts of use or display of a firearm in the commission of a felony, and burglary while armed with a deadly weapon. In his Petition, Schmuhl asserts a single claim for ineffective assistance of counsel; underpinning that claim are five specific errors that, per Schmuhl, "[t]ogether . . . amounted to a complete mishandling of Schmuhl's mental state defense." Pet. 17.[2] Respondent moves to dismiss on the ground that Schmuhl's claims lack merit. Schmuhl has responded. For the reasons stated below, the Motion to Dismiss will be GRANTED.

---

[1] Schmuhl's originally filed Petition, ECF No. 1, was deficient insofar as it lacked the signature of either Schmuhl or "a person authorized to sign it for [Schmuhl] under 28 U.S.C. § 2242." Order, ECF No. 6 (quoting Rules Governing § 2254 Cases in U.S. District Courts, Rule 2(c)(5)). The Court accordingly ordered the filing of an appropriately signed petition. *Id.* Schmuhl timely complied, and the Amended Petition, ECF No. 7, became the operative Petition for purposes of this action.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects spelling, capitalization, and footnote numbers in its quotations from the record. The Court omits some secondary citations in its quotations from the Circuit Court's opinions; those that remain have been updated to cite the South Eastern Reporter.

## I. PROCEDURAL HISTORY

Following a multi-week trial in Fairfax County Circuit Court, the jury convicted Schmuhl of two counts of abduction for pecuniary benefit, two counts of aggravated malicious wounding, two counts of use or display of a firearm in the commission of a felony, and burglary while armed with a deadly weapon. *Schmuhl v. Commonwealth* ("*Schmuhl I*"), 818 S.E.2d 71, 74 (Va. Ct. App. 2018) (reciting trial court history). Schmuhl was sentenced to an aggregate sentence of two terms of life in prison plus an additional ninety-eight years. *Id.* Schmuhl appealed, and the Court of Appeals of Virginia affirmed the convictions. *Id.* at 87. The Supreme Court of Virginia likewise affirmed, "for the reasons stated in the opinion of the Court of Appeals." *Schmuhl v. Commonwealth*, 883 S.E.2d 885, 885 (Va. 2019). The Supreme Court of Virginia subsequently also denied Schmuhl's petition for rehearing. *Schmuhl v. Commonwealth*, No. 181596, at 1 (Va. Feb. 14, 2020).

On February 16, 2021, Schmuhl filed a petition for writ of habeas corpus in the Circuit Court of Fairfax County, Virginia, raising claims identical to those in the instant § 2254 Petition. *Compare* Pet. 17, *with* Mot. Dismiss Mem. Supp. Ex. 4 ("State Ct. Pet.") at 35, ECF No. 16-4. Finding that Schmuhl failed to demonstrate either that trial counsel's performance was deficient or that it was prejudicial, on August 26, 2021, the Circuit Court denied Schmuhl's request for an evidentiary hearing, granted Respondent's motion to dismiss, and dismissed the petition. Mot. Dismiss Mem. Supp. Ex. 5 ("Cir. Ct. Habeas Op.") at 70–71, ECF No. 17-1. Schmuhl appealed to the Supreme Court of Virginia, which accepted the appeal, but on December 14, 2023, the state supreme court affirmed all aspects of the Circuit Court's habeas judgment. *See generally* Mot. Dismiss Mem. Supp. Ex. 6 ("Va. S. Ct. Op."), ECF No. 17-2 at 133–54.

On February 4, 2025, Schmuhl filed the operative federal habeas Petition. ECF No. 7; *see supra* n.1. After being granted various extensions, Respondent timely filed a Motion to Dismiss & Rule 5 Answer on December 22, 2025. ECF No. 15. Schmuhl filed a Reply on February 27, 2026, after obtaining leave of court. ECF No. 21. The matter is accordingly ripe for review.

## II. APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Given this standard, the decision of the Supreme Court of Virginia, with respect to Schmuhl's claims, figures prominently in this Court's opinion.

## III. SCHMUHL'S CLAIM FOR HABEAS RELIEF

Schmuhl lodges a single claim of ineffective assistance of counsel, specifically that "trial counsel provided ineffective assistance of counsel when they mishandled Mr. Schmuhl's only defense." Pet. 17. He premises this claim on five discrete "errors" allegedly committed by his trial counsel, which boil down to counsel's failure to assert an insanity defense in the lead-up to and at trial. *See id.*

## IV. ANALYSIS

Because Schmuhl asserts the exact same claim for relief raised and adjudicated on the merits in his state court petition, the Court may only grant habeas relief in this case if the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The Court finds neither to be the case.

### A. General Standard for Ineffective Assistance of Counsel Claims

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance." *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective

assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

Furthermore, the United States Court of Appeals for the Fourth Circuit has admonished that, "[w]hen a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law . . . , a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law." *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012). That admonition is of particular import here. Schmuhl's claim of ineffective assistance of counsel involves the interpretation and application of Virginia law, specifically *Stamper v. Commonwealth*, 324 S.E.2d 682 (Va. 1985), and its progeny.

**B. Summary of Trial Counsel's Conduct**

Schmuhl's claim rests on the proposition that trial counsel misunderstood the relevant evidence and law and so did not appreciate that an insanity defense was the only appropriate defense available and the only avenue by which Schmuhl could introduce certain "critical" evidence regarding his mental state at the time of the underlying offensive conduct. This underlying premise lacks merit. The Supreme Court of Virginia aptly summarized the informed conduct of counsel as follows:[3]

> <u>1. Pre-Trial Conduct</u>
>
> Schmuhl's appointed counsel, Bradley Haywood ("Haywood") and Andrew Elders ("Elders") (collectively "trial counsel"), retained Dr. Eileen Ryan ("Dr. Ryan"), a psychiatrist, and Dr. Daniel Murrie ("Dr. Murrie"), a clinical and forensic psychologist, to evaluate Schmuhl's sanity. After evaluating Schmuhl, Dr. Ryan concluded that he was suffering from an acute medication induced delirium at the time of the home invasion and, therefore, he was unable to understand the nature, character, and consequences of his actions.
>
> As a result, Schmuhl's trial counsel gave notice that

[3] The Court adds its own headers and/or alters the headers from the Virginia Supreme Court's opinion, without further notation, for the sake of clarity.

> Schmuhl intends to assert at trial that his mental state at the time of the offense met the legal standard for insanity, and intends to present evidence, including expert testimony, in support of this defense. His mental state at the time of the offense resulted from the use of medication.

The Commonwealth moved to compel trial counsel to provide the materials required under Code § 19.2-169.5, including the results of any evaluations of Schmuhl. The Commonwealth further sought to have Schmuhl evaluated by its own mental health expert. In response, trial counsel explained that they were not raising an insanity defense; rather, they clarified that [they] were raising "an involuntary intoxication defense." As part of their response, Schmuhl's trial counsel noted "that there is a lack of precedent interpreting [the statutes governing an insanity defense] in a case alleging involuntary intoxication" to explain why they gave notice about the nature of their defense.

On November 30, 2015, the trial court held a hearing on the motion to compel. At the hearing, trial counsel reiterated their position that they were raising an involuntary intoxication defense, which they believed to be distinct from an insanity defense. As they explained it, "there's no real reason to have a psychiatric evaluation by a different evaluator" with an involuntary intoxication defense because the intoxicant had already left Schmuhl's system by the time he could be evaluated. Schmuhl's trial counsel further asserted that such an evaluation, in the absence of an insanity defense, "would risk violating his constitutional rights including his right to counsel, his right to attorney-client privilege, [and his] Fifth Amendment right to be free from self-incrimination." They went on to explain that "the end game of this, of [an] involuntary intoxication defense, if we win, my understanding is that Mr. Schmuhl will walk free, he would have no further obligation to the court, he would not be civilly committed."

The Commonwealth agreed that an involuntary intoxication defense was separate from an insanity defense. However, the Commonwealth argued that, under *Stamper v. Commonwealth*, 228 Va. 707, 324 S.E.2d 682 (1985), Schmuhl would be prohibited from putting on any expert testimony related to his mental status if he only raised an involuntary intoxication defense. The trial court indicated that it agreed with the Commonwealth. Trial counsel responded unequivocally that it was raising an involuntary intoxication defense, not an insanity defense. With regard to the applicability of Stamper, trial counsel requested additional time to brief that issue, which the trial court granted.

In a subsequent memorandum, Schmuhl's trial counsel argued that Stamper was inapplicable because it "fundamentally concerned the admissibility of expert testimony regarding defenses not recognized in Virginia" which were "offered in support of facts that by law were not in issue in the case." Specifically, they claimed that the defendant in Stamper was advocating for the recognition of a diminished capacity defense in Virginia. Trial counsel clarified that they were not seeking to use a diminished capacity defense; rather, they were raising an involuntary

intoxication defense, which was recognized at common law. The Commonwealth responded by insisting that Stamper established a bright-line rule that "a defendant's mental health is not relevant to his guilt or innocence and is inadmissible."

After considering the parties' briefs, the trial court held a hearing to decide whether to allow Schmuhl to present mental health evidence at trial. During the hearing, the trial court stated that it was "not certain that Stamper controls the question of whether [trial counsel] can call a mental health expert." The Commonwealth conceded that this was a "complicated issue" because, as the trial court noted, if the "proper predicate is laid, testimony about a Defendant's mental health might be relevant to an understanding of the impact of a medicine or a combination of medicines." However, the Commonwealth explicitly stated that it was not conceding that such evidence would be admissible in this case because it did not know the nature of the evidence that Schmuhl's trial counsel would be relying on. Trial counsel reiterated their position that Stamper was about the application of a diminished capacity defense and, therefore, it did not apply to evidence submitted in support of an involuntary intoxication defense. Further, trial counsel repeatedly declined requests from the trial court to proffer how they intended to use the mental health evidence. According to trial counsel, such a proffer would implicate their trial strategy. At the same time, trial counsel acknowledged that they might be wrong, but they "were the ones taking on the risk."

The trial court ruled that, without a proffer from trial counsel regarding how the mental state evidence would be used, it could not rule on that matter before trial. The trial court also noted that trial counsel had acknowledged that, by not making a proffer which would allow it to rule on the admissibility of the mental health evidence, "it puts them at risk of having evidence excluded in the middle of trial."

2. Conduct at Trial

At trial, after the Commonwealth put on its evidence, the trial court held a hearing outside of the presence of the jury to determine the admissibility of Schmuhl's expert testimony related to his mental health. Trial counsel proffered that Dr. Ryan would testify that Schmuhl was suffering from medication-induced delirium during the home invasion caused by an inappropriate combination of prescription medications. The Commonwealth objected, asserting that medication-induced delirium is not involuntary intoxication, it is a mental disease or defect, and therefore Schmuhl was required to invoke an insanity defense. As trial counsel had not raised an insanity defense, the Commonwealth asserted that it was inappropriate to allow Dr. Ryan to testify about Schmuhl's mental state under Stamper.[4]

After considering the matter, the trial court entered an order prohibiting Schmuhl from presenting "expert psychiatric testimony on the affirmative defense of

[4] The Commonwealth conceded that Dr. Ryan could testify as an expert in toxicology and discuss the interaction of the various drugs that Schmuhl had been prescribed.

'involuntary intoxication.'" At the same time, the trial court made clear that its order did not preclude Schmuhl from calling an expert to address "the toxicological effects of ingested medications," provided a proper foundation was laid. Trial counsel moved for reconsideration, which the trial court denied.

Schmuhl testified in his own defense and described all of the medications he was taking prior to the home invasion. He further claimed that he did not remember planning or conducting the home invasion. Dr. Ryan subsequently testified as an expert in toxicology and the pharmacological effects of medication. She testified about each of the medications Schmuhl claimed to have taken prior to the offense, how they affected the brain, and the possible side effects. Dr. Ryan was permitted to opine that certain drugs that Schmuhl was prescribed could affect a person's mental status and cause confusion, but she was not permitted to testify about reports of "psychotic reactions." The trial court explained that "psychosis is an insanity defense."

Outside of the presence of the jury, Schmuhl's trial counsel argued that an involuntary intoxication defense involves an altered mental state, which can include psychosis and/or medication induced delirium. They further claimed that they were also asserting an unconsciousness defense, which "does not question whether a defendant understands his actions or knows that they were wrong, but it rather precludes mens rea entirely." According to trial counsel, "[b]y precluding mens rea entirely, psychiatric testimony offered in support of an unconsciousness defense is not prohibited by [Stamper]." Trial counsel insisted "that delirium is an acknowledged predicate for the unconsciousness defense" and, therefore, they should be permitted to present expert psychiatric testimony to establish that Schmuhl was unconscious during the home invasion. The trial court ruled that, under Stamper, Dr. Ryan was not permitted to offer any "expert mental health testimony on the mental status" of Schmuhl. Trial counsel then made an extensive proffer of what Dr. Ryan's testimony would have been with regard to the psychological effects of the various medications Schmuhl was on at the time of the home invasion. After hearing the proffer, the trial court permitted Dr. Ryan to testify about the side effects of the medications that Schmuhl was on. However, the trial court explicitly stated that Dr. Ryan could not testify that the medications caused medication induced delirium or that Schmuhl was, in fact, involuntarily intoxicated.

When Dr. Ryan resumed her testimony, she testified that Schmuhl's behavior was consistent with someone who had taken the combination of medications that he was reportedly taking in the days leading up to the home invasion. She also elaborated on the toxicological effects of Schmuhl's prescribed medications, including impaired consciousness, paranoia, confusion, and detachment from reality. Dr. Ryan further testified about symptoms and effects of toxic polypharmacy, and conditions that can predispose a patient to be more susceptible to the litany of side effects she had previously discussed.

> After both parties finished putting on their evidence, the trial court granted trial counsel's request for a jury instruction on involuntary intoxication. However, the trial court denied their request for an instruction defining intoxication or on a defense of unconsciousness. After deliberating, the jury found Schmuhl guilty on all counts.
>
> <u>3. Appellate Conduct</u>
>
> On appeal, Schmuhl argued that the trial court erred in interpreting *Stamper* as barring "evidence of mens rea unless a defendant presents an insanity defense." *Schmuhl I*, 818 S.E.2d at 80. According to Schmuhl, *Stamper* merely stood for the proposition that "the Commonwealth does not recognize the diminished capacity defense and reiterated that the *M'Naghten* rule continues to apply to insanity defenses." *Id*. The Court of Appeals, however, disagreed with Schmuhl's interpretation of *Stamper*, holding that the express holding of the case was that "the only way to negate mens rea with evidence of a defendant's mental state" is to plead insanity. *Id*. at 81. The Court of Appeals further held that involuntary intoxication "is recognized in the Commonwealth as an alternative basis for an insanity defense" as opposed to being a separate and distinct defense. *Id*. Regarding the unconsciousness defense, the Court of Appeals determined that any error by the trial court was harmless, as the "record reflects that appellant was not unconscious during the attack" because the evidence "shows he planned and completed the home invasion with precision, clarity, and control." *Id*. at 308–09. This Court subsequently upheld the Court of Appeals' ruling in a published order.

Va. S. Ct. Op. 1–7.

### C. Counsel Was Not Ineffective

In his sole claim, Schmuhl argues that counsel rendered ineffective assistance by failing to understand the relevant evidence and law and consequently proceeding in a manner that foreclosed the presentation of an insanity defense (and all related evidence) at trial. Pet. 17–39. Schmuhl argues that,

> [i]n this case, counsel's performance was objectively unreasonable. Counsel recognized the need to present a mental state defense and retained experts, including Dr. Ryan, who concluded that Schmuhl suffered from a medication-inducted delirium that made him incapable of understanding the nature, character, and consequences of his actions. Dr. Murrie also was prepared to testify that delirium was a mental disorder that could meet the *M'Naghten* standard. Counsel thus had evidence from two experts that Mr. Schmuhl suffered from a mental condition that met the insanity standard. But counsel misunderstood Mr. Schmuhl's condition, misread the law, and then misapplied the law to the forensic evidence. These are not objectively reasonable actions.

Pet. 52. In summarizing and rejecting this claim, the Supreme Court of Virginia explained:

> Here, Schmuhl insists that the record conclusively establishes that his trial counsel were ignorant of or misread our decision in *Stamper* and, therefore, their performance was, by definition, unreasonable.[5] Specifically, Schmuhl contends that this Court's holding in *Stamper* stating that "evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt," 324 S.E.2d at 688, unambiguously established that his trial counsel's reliance on involuntary intoxication and/or unconsciousness to negate *mens rea* was doomed to fail. According to Schmuhl, by fixating on this strategy to the exclusion of the more viable insanity defense, his trial counsel's performance was not objectively reasonable.
>
> Schmuhl is correct that, "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014). However, he fails to consider that a distinction exists between a losing argument based on ignorance of a fundamental point of law and a losing argument that attempts to logically extend the existing law. Whereas the former is the "quintessential example of unreasonable performance under *Strickland*," *id.*, the latter is an objectively reasonable risk inherent in the practice of law.
>
> A review of the facts in this case demonstrates that trial counsel were not ignorant of the import of *Stamper*. At all relevant points in this case, it was evident that Schmuhl's trial counsel were aware of *Stamper*, as the record is replete with numerous instances where they specifically referenced *Stamper*, and they attempted to distinguish that decision. The habeas court's description of trial counsel's knowledge is particularly apt: "trial counsel were intimately familiar with *Stamper* and the Virginia cases that preceded and followed *Stamper*."[6]
>
> Moreover, contrary to Schmuhl's argument here, it was not so apparent at the time trial counsel raised their arguments that *Stamper* effectively negated an involuntary intoxication or unconsciousness defense. Indeed, at that time, the interplay between *Stamper* and the defenses of involuntary intoxication or unconsciousness was not particularly well developed. As the habeas court recognized, "*Stamper* was not an

---

[5] We recognize that Schmuhl also challenges the nature of his trial counsel's approach to his defense, specifically, whether or not it was the result of a strategic decision. However, we need not reach that issue, because "[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). Accordingly, our focus is on the objective reasonableness of the defense raised by Schmuhl's trial counsel; we make no decision regarding whether that defense was the result of a strategic decision.

[6] As the judge presiding over the habeas court was the same judge who presided over Schmuhl's trial, he was ideally situated to assess trial counsel's awareness of *Stamper*. *See Schriro v. Landrigan*, 550 U.S. 465, 476 (2007) (noting that, where the judge presiding over a postconviction proceeding is the same as the judge that presided over the trial, that judge is "ideally situated" to address contested points of fact).

> involuntary intoxication or unconsciousness case and did not explicitly address the issue of whether expert mental health testimony could be offered to address the discrete issue of the impact of intoxicants on an individual's mental state."

Va. S. Ct. Op. 15–16. The Virginia Supreme Court proceeded to survey the progression of Virginia case law from *Stamper* through *Schmuhl I*, ultimately concluding that

> the state of the law regarding the interplay between *Stamper* and the defenses of involuntary intoxication and unconsciousness was not well established at the time of *Schmuhl*'s trial.[7] Indeed, it was not until we affirmed the Court of Appeals' decision in *Schmuhl I*, that this matter was fully decided. As such, we cannot say that it was unreasonable for trial counsel to argue that involuntary intoxication or unconsciousness were separate defenses from insanity and, therefore, that *Stamper* did not apply.

*Id.* at 16–21 (applying "the United Stated Supreme Court's admonishment to make '[a] fair assessment of attorney performance' by removing 'the distorting effects of hindsight,' reconstructing 'the circumstances of counsel's challenged conduct,' and evaluating 'the conduct from counsel's perspective at the time' of . . . trial" (quoting *Strickland*, 466 U.S. at 689)). The state supreme court went further, noting that

> [w]e also cannot ignore the potential benefits of trial counsel's approach. Had they succeeded, it would have benefitted Schmuhl immensely. As the habeas court pointed out, by avoiding an insanity defense, trial counsel garnered a significant strategic advantage by depriving the Commonwealth of the ability to have its expert evaluate Schmuhl, limiting the Commonwealth's ability to rebut Dr. Ryan's testimony, and, if the defense was successful, ensuring that Schmuhl "would not be subject to the panoply of rules and regulations governing a Not Guilty By Reason of Insanity acquittee."

[7] Although Schmuhl points to *Morgan v. Commonwealth*, 646 S.E.2d 899 (2007), for the notion that involuntary intoxication had been recognized as a form of insanity, it is apparent that he is reading too much into the Court of Appeals' opinion. *Morgan* involved a question regarding the burden of proof when a defendant raises an "insanity defense of involuntary intoxication." In other words, the Court of Appeals was not deciding whether involuntary intoxication was a form of insanity defense; rather, it was deciding who bore the burden when the defendant chose to assert that they were insane as a result of involuntary intoxication. Thus, the case does not stand for the proposition that an involuntary intoxication defense is the same as an insanity defense. At best, *Morgan* can be interpreted as tacit recognition that there is some overlap in the defenses.

> Taken as a whole, it is apparent that trial counsel's actions in this case amounted to an unsuccessful attempt to extend the existing law to their client's benefit.[8] The record clearly establishes that Schmuhl's trial counsel made a thorough investigation of the law and facts and, based on that investigation, they chose a course of action that they believed had the best chance of success.[9] This is precisely the type of representation that is expected from competent attorneys. Accordingly, we cannot say that Schmuhl's trial counsel's performance was deficient.

*Id.* at 21.[10] The Court discerns no unreasonable application of clearly established federal law and no unreasonable determination of the facts in this analysis. *See* 28 U.S.C. § 2254(d)(1)–(2).

In arguing for this Court's ability to grant habeas over the state court's rejection of identical arguments, Schmuhl fixates on language from the state courts—both the Circuit Court and the Virginia Supreme Court—describing trial counsel's decisions and actions as "strategic." He argues that such characterization constitutes an unreasonable factual determination, particularly when posed against trial counsel's affidavits attesting that they "did not make a strategic decision" and "w[ere] not engaged in gamesmanship." Reply 2–4, ECF No. 21. But Schmuhl overlooks the

---

[8] It is readily apparent that trial counsel were, essentially, attempting to take advantage of a perceived loophole in the law. Notably, at the November 30, 2015 hearing, while arguing that involuntary intoxication and insanity were separate, trial counsel pointed out that "the law is a little unclear in Virginia on this topic." They then went on to state that "the end game of this, of [an] involuntary intoxication defense, if we win, my understanding is that Mr. Schmuhl will walk free, he would have no further obligation to the court, he would not be civilly committed."

[9] It is further worth noting that, if we were to rule that trial counsel's performance was deficient in this case, it would set a precedent under which any unsuccessful defense involving a novel legal argument in a difficult case would be grounds for habeas relief. As the United States Supreme Court explained, such a result is untenable.

> The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

*Strickland*, 466 U.S. at 690.

[10] The Virginia Supreme Court did not reach the issue of whether counsel's performance prejudiced Schmuhl, properly noting that failure under either *Strickland* prong is fatal to an ineffective assistance of counsel claim. Va. S. Ct. Op. 13, 22.

fact that the state supreme court expressly *declined* to make any "decision regarding whether [trial counsel's] defense was the result of a strategic decision." Va. S. Ct. Op. 15 n.2 (quoted herein, *supra* n.5). Rather, the Virginia Supreme Court correctly noted that the true inquiry is whether counsel's choices were objectively reasonable. *Id.* Applying the "especially deferential" standard owed to the state court due to its analysis of purely Virginia law, i.e., *Stamper* and its progeny, *Richardson*, 668 F.3d 128, 141 (4th Cir. 2012), this Court finds no basis for disturbing the state court's conclusion that trial counsel's choice to pursue their alternative mental state defense in lieu of a traditional insanity defense was, based on the landscape of Virginia law at the time, reasonable.

Accordingly, because the state court's determination with respect to the deficiency prong of *Strickland* is neither contrary to nor based on an unreasonable application of law, nor is it based on an unreasonable determination of the facts as presented in the state record, and because failure on this first prong is critical to Schmuhl's claim, the Court cannot grant habeas relief. Count One and the Petition will be DISMISSED.

## V. REQUEST FOR EVIDENTIARY HEARING

Schmuhl requests an evidentiary hearing to present evidence "to prove his factual allegations," having been denied such an opportunity in state court. Reply 8–10. In determining whether a case warrants an evidentiary hearing, a federal court must consider whether the evidentiary hearing would provide the petitioner the opportunity to "prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000). A federal court must also consider the standards set forth in 28 U.S.C. § 2254 when considering whether an evidentiary hearing is appropriate. *Schriro*, 550 U.S. at 474. "It follows that if the

record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

Here, based on a thorough evaluation of Schmuhl's claims and the record before the Court, the Court concludes that Schmuhl's claims of ineffective assistance of counsel lack merit. Habeas relief is therefore precluded. Moreover, as the state courts both determined, Schmuhl's evidence is already unrebutted, and as such there are no factual questions in dispute. *See* Va. S. Ct. Op. 11–12. Thus, because habeas relief under § 2254 is not warranted on this undisputed record, Schmuhl's request that the Court hold an evidentiary hearing will be DENIED.

## VI. CONCLUSION

The Motion to Dismiss (ECF No. 15) will be GRANTED. Schmuhl's claim and this action will be DISMISSED. A certificate of appealability will be DENIED.[11]

An appropriate Final Order will issue.

/s/
Roderick C. Young
United States District Judge

Date: August 25, 2026
Richmond, Virginia

[11] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Schmuhl fails to meet this standard.